UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JEFFREY A. DANIK**, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **U.S. DEPARTMENT OF JUSTICE**, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 17-cv-1792 (TSC) |

## MEMORANDUM OPINION

Plaintiff Jeffrey Danik has sued the U.S. Department of Justice (DOJ) to compel disclosure of information responsive to his Freedom of Information Act (FOIA) request to the FBI. Before the court are DOJ's motion for summary judgment under Federal Rule of Civil Procedure 56 and Danik's cross-motion for summary judgment.

For the reasons set forth below, the court will DENY DOJ's Motion for Summary Judgment (ECF No. 29), and DENY Danik's Cross-Motion for Summary Judgment (ECF No. 32).

### I.   BACKGROUND

Danik is a retired FBI agent who submitted two FOIA requests to the FBI regarding former FBI Deputy Director Andrew McCabe. The first request sought texts and emails related to conflicts of interest, financial disclosures, and McCabe's spouse's political campaign.[1] (ECF

---

[1] Danik specifically requested records related to McCabe involving: "(1) conflicts-of-interests; (2) McCabe's wife (Dr. Jill McCabe's) political campaign; (3) his reporting to the FBI of any job interviews or offers during the period or that specifically contain the following word-phrases or common variants of: Common Good VA; Terry McAuliffe, Clinton, The Virginia Democratic Party; and Jill McCabe; (4) financial disclosure forms that contain any information for former Deputy Director McCabe between January 2015 and October 2016; (5) entries for McCabe in the FBI 'EPAS' system related to reporting conflicts of interest, job interviews and employment

No. 29-3, First Hardy Decl., at Ex. A.)  The second sought texts and emails regarding any act by McCabe to "interfere, insert himself, control, impede, manage or influence the referral to or investigation of the Clinton email server case." (*Id.* at Ex. M.)  This request also asked for McCabe-related texts or emails containing twenty-three specific words or phrases.  (*Id.*)

The FBI searched for only six of the requested search terms, and claims the remainder are too broad.  (First Hardy Decl. ¶ 31.)  It searched emails but did not search McCabe's text messages.  (First Hardy Decl. ¶ 33.)  The FBI identified 178 pages of responsive records and released 169 pages in full or part, and withheld nine pages in full, withholding information under Exemptions 5, 6, 7(C), and 7(E).  (First Hardy Decl. ¶ 28.)

Danik contends that the FBI's searches were inadequate because it did not search McCabe's text messages and did not search records using all his requested search terms.  (ECF No. 31, Pl. Br., at 2.)  Danik further challenges the FBI's withholding under Exemption 5.  (*Id.* at 3–10.)

## II.     LEGAL STANDARD

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)).  The Act requires that federal agencies comply with requests to make their records available to the public, unless such "information is exempted under [one of nine] clearly

---

offers or his wife's democratic political campaign during the same time period; and (6) reports of FBI officials who were assigned to monitor political contributions to Dr. McCabe's campaign accounts to ensure that subjects of FBI investigations over which former Deputy Director McCabe had control, were not contributing money."  (ECF No. 29-1.)

delineated statutory [exemptions]." *Id.* (internal quotation marks omitted); *see also* 5 U.S.C. §§ 552(a)–(b).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). Summary judgment in FOIA cases may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and nonconclusory." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). These declarations are "accorded a presumption of good faith which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.*

"To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with specific facts demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld . . . records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (citing *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (*Tax Analysts II*)) (quotation marks omitted). By corollary, "[a] non-moving party's complete failure to come forward with evidence to demonstrate the existence of a genuine issue of material fact constitutes a reason for the grant of summary judgment under [Rule 56(e)]." *Smith v. U.S. Dep't of Justice*, 987 F. Supp. 2d 43, 47 (D.D.C. 2013).

Summary judgment is proper where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). Courts must view "the evidence in the light most favorable to

the non-movant," "draw[ ] all reasonable inferences accordingly," and determine whether a "reasonable jury could reach a verdict" in the non-movant's favor. *Lopez v. Council on Am.– Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

### III.   ANALYSIS

#### A. <u>Agency Records</u>

The FBI contends that McCabe's text messages, which were not uploaded to the FBI's official recordkeeping system, are not "agency records" under FOIA. (ECF No. 29-1, Def. Br., at 10–14.) Because FOIA does not define "agency records," the Supreme Court has established a two-part test to determine whether documents qualify as agency records: 1) "whether the records were created or obtained by the agency," and 2) "the extent to which the agency was in control of the records at the time the FOIA request was made." *Physicians Comm. for Responsible Med. v. U.S. Dep't of Agric.*, 316 F. Supp. 3d 1, 8 (D.D.C. 2018) (citing *Tax Analysts II*, 492 U.S. at 144–45). The court must examine four factors to determine whether an agency exercises sufficient control over a document to satisfy the second element: "(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files." *Burka v. U.S. Dep't of Health and Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (quoting *Tax Analysts v. U.S. Dep't of Justice*, 845 F.2d 1060, 1069 (D.C. Cir. 1988) (*Tax Analysts I*), *aff'd on other grounds*, 492 U.S. 136 (1989)). This is a "totality of the circumstances test," *Consumer Fed. of Am. v. U.S. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006), however, the third factor—the degree to which an agency has used the

document—is "decisive." *Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, 646 F.3d 924, 927–28 (D.C. Cir. 2011) (*Judicial Watch I*).

The FBI has not created an adequate record on either possession or control for the court to determine whether McCabe's text messages are agency records. The FBI establishes no facts regarding whether it possesses McCabe's texts messages. (*See generally* First Hardy Decl.; ECF No. 34-1, Second Hardy Decl.) But, based on an Office of Inspector General (OIG) Report, the FBI appears to "wirelessly collect text messages sent to or from FBI-issued mobile devices." (Pl. Br. at n.5 (citing U.S. Dep't of Justice, Office of Inspector General, *Procedural Reform Recommendation for the Federal Bureau of Investigation* (Feb. 2019)).) Using this collection process, the FBI may have "the ability to produce text messages during the discovery process of criminal and civil matters, as well as for internal investigations." (*Id.*) But the FBI has provided no facts about this system or whether it continues to possess McCabe's texts. Without a proper record, the court cannot determine whether the FBI has shown that it does not possess the requested documents.

Further, the FBI has created a limited record on whether it controls the text messages, but nonetheless asks the court to find that it does not, and therefore the messages are not agency records. But the fact-intensive inquiry into whether a document is an "agency record" under FOIA does not lend itself to the broad ruling the FBI seeks, and it has not shown that the court could make such a finding on the record before it.

The FBI offers no facts or argument regarding the first control factor, whether the creator has retained or relinquished control. It cites, in passing, *Gallant v. NLRB*, 26 F.3d 168, 171–72 (D.C. Cir. 1994), which addressed whether letters written on agency equipment, over which the writer had not relinquished control, were agency records. (Def. Br. at 11.) But the FBI does not

indicate how that case would apply here and does not contend that McCabe has retained control over the text messages.

The second control factor, whether the agency is able to use and dispose of the record, examines whether the agency used the document in the "conduct of its official duties." *Judicial Watch I*, 646 F.3d at 928 (quoting *Tax Analysts II*, 492 U.S. at 145). The FBI again establishes no relevant facts regarding McCabe's texts. Hardy declares that "text messages are typically created to convey informal, non-substantive information," and therefore assumes that McCabe's texts were not used to conduct official business. (First Hardy Decl. ¶¶ 35, 37.) This assumption does not provide the court with a basis for concluding that McCabe did not conduct agency business over text message.[2] The FBI has created no record about how McCabe used text messages, and therefore the court cannot find that none of his texts were for agency business.

As to the third control factor, the extent to which agency personnel have read or relied on the document, the FBI has again established no facts regarding whether all of McCabe's texts were read or relied on. (*See generally* First Hardy Decl.; Second Hardy Decl.) Danik points to specific texts referenced in the OIG Report about McCabe to show that agency personnel read and relied on McCabe's texts. (Pl. Br. at 31 (citing U.S. Dep't of Justice, Office of Inspector General, *A Report of Investigation of Certain Allegations Relating to Former FBI Deputy Director Andrew McCabe* (Feb. 2018)).) The FBI disputes that assertion but provides no factual

---

[2] Indeed, this assumption appears to be belied by the OIG Report, which describes texts McCabe sent and received regarding the Clinton email server investigation. OIG Report at 349 (explaining text messages McCabe sent and received about whether the FBI should notify Congress of the ongoing investigation). The FBI concedes that the texts show McCabe "used text messages to advise colleagues about discrete topics of the agency's investigation." (Def. Reply at 2–3.) But it contends that such "quick, one-off conversations" do not reflect agency decisionmaking. (*Id.*) The FBI cites no authority for this proposition, and the court will not reach the question of whether the texts were used to conduct official business on the limited record before it.

support. (ECF No. 34, Def. Reply, at 2–3; *see generally* First Hardy Decl.; Second Hardy Decl.) It further argues that because the texts were read by only a few people, they cannot be agency records. (Def. Reply at 3.) For this proposition, the FBI relies on *Consumer Federation of America*, 455 F.3d at 287, in which the D.C. Circuit addressed whether agency employees' calendars were personal or agency records. The Court held that some calendars—those distributed to colleagues—were agency records, and one calendar, which was distributed only to the employee's secretary, was not. *Id.* The fact of distribution was crucial in determining whether the calendar was used to "facilitate the day-to-day operations of the agency" rather than "for the convenience of the individual official." *Consumer Fed'n of Am.*, 455 F.3d at 287 (quoting *Bureau of Nat'l Affairs, Inc. v. U.S. Dep't of Justice*, 742 F.2d 1484, 1495–96 (D.C. Cir. 1984)). Here, the FBI has not shown that distribution of McCabe's texts is relevant to determining whether they were used to "facilitate the day-to-day operations of the agency." *Cf. Edelman v. SEC*, 172 F. Supp. 3d 133, 153 (D.D.C. 2016) (explaining that distribution is determinative in cases where it "serve[s] as evidence that" the records "'were created for the purpose of conducting agency business'" (quoting *Bureau of Nat'l Affairs*, 742 F.2d at 1496 (emphasis omitted)). A document with limited distribution, like an email between two people reflecting an agency decision, can be an agency record. *Cf. Hyatt v. U.S. Patent & Trademark Office*, 346 F. Supp. 3d 141, 148 (D.D.C. 2018) (finding email between two agency employees to be an agency record).

      Finally, the FBI has not provided enough information for the court to decide the fourth control factor, whether the documents have been integrated into agency records. The FBI contends that McCabe's text messages are not part of the FBI's records because McCabe did not upload them to the FBI's official recordkeeping system under FBI procedures. (Def. Br. at 12;

First Hardy Decl. ¶¶ 39–42.) But the D.C. Circuit has "expressly reject[ed]" this argument, explaining that "treatment of documents for disposal and retention purposes under the various federal records management statutes" does not necessarily "determine[] their status under FOIA." *Consumer Fed'n of Am.*, 455 F.3d at 289 (quoting *Bureau of Nat'l Affairs*, 742 F.2d at 1493); *see also Edelman*, 172 F. Supp. 3d at 152 (noting "documents can be 'agency records' under FOIA even if they need not have been preserved (or created) under federal law or agency practice"). And the FBI has not shown whether it retained McCabe's text messages in its files. *See Edelman*, 172 F. Supp. 3d at 152 (explaining attorney notes were in the agency's files because they were on the agency's computer system and therefore "necessarily subject[ed] . . . to the control of that system's administrators (quoting *Consumer Fed'n of Am.*, 455 F.3d at 290).

Based on the record before it, the court declines to determine whether McCabe's text messages are agency records, and will therefore deny summary judgment to DOJ. The court will, however, permit the FBI to supplement the record, and therefore will also deny summary judgment for Danik.

### B. FBI's Searches

An agency responding to a FOIA request must make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). An agency will be granted summary judgment on the adequacy of its search if it "show[s] beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (*Weisberg II*)). But an agency is not required to undertake a search that is so broad as to be unduly burdensome. *Nation*

*Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995). To show that a search is unduly burdensome, the agency must "provide sufficient explanation as to why such a search would be unreasonably burdensome." *Id.* To meet that burden, an agency generally provides a "detailed explanation" of the "time and expense of a proposed search." *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008); *see also Ayuda, Inc. v. Fed. Trade Comm'n*, 70 F. Supp. 3d 247, 275 (D.D.C. 2014) (holding an agency's affidavits must show with "reasonable specificity" why further segregation of documents, properly withheld under FOIA exemptions, would be unreasonably burdensome).

The FBI claims that searching McCabe's texts and running Danik's remaining proposed search terms for McCabe's emails would be "unduly burdensome," (Def. Br. at 9–10), but it fails to establish that burden. The FBI ran three of the search terms it initially rejected (including "run" and "email"), which generated over 20,000 hits, and the FBI estimates it would take over 200 hours to review the results. (Second Hardy Decl. ¶ 6.) The FBI assumes, without running the searches, that the remaining terms would generate a similar number of hits and require similar hours to review. But it has no factual basis to assume that all the other terms, which include "until I return" and "New York Times" would generate a similar number of hits. Thus, while the initial estimate from the search terms the FBI ran may indicate some terms are unduly burdensome, the FBI has not shown this for all the proposed terms. *See Mattachine Soc'y of Washington, D.C. v. U.S. Dep't of Justice*, 267 F. Supp. 3d 218, 227 (D.D.C. 2017) (rejecting FBI's argument that a search was burdensome where it ran only one of several terms and provided insufficient details on the burden imposed).

The FBI also claims that it would be unduly burdensome to search McCabe's text messages because such a search is "not compatible" with the FBI's recordkeeping processes.

But again, the FBI establishes no factual basis for this contention, as Hardy does not even address the burden of searching McCabe's text messages. (*See generally* First Hardy. Decl.; Second Hardy Decl.)

Because the FBI has not shown an undue burden, the court will deny summary judgment for the FBI. The FBI may supplement the record regarding the burden of these searches, although the court notes that the parties appear open to compromise on the search terms. (*See* Pl. Br. at n.4 (suggesting the parties meet and confer regarding the terms).) Therefore, the court will also deny summary judgment for Danik.

### C. **FBI's Invocations of Exemptions**

The FBI withheld three categories of documents under Exemption 5, claiming protection under the deliberative process privilege. Exemption 5 shields documents that would "normally [be] privileged from discovery in civil litigation against the agency," such as documents protected by the attorney-client, work-product, and deliberative process privileges. *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997). To withhold a document under Exemption 5, an agency must show that "the disclosures of information withheld . . . would harm the agency's deliberative process." *Judicial Watch v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 97 (D.D.C. 2019) (*Judicial Watch II*) (citing 5 U.S.C. § 552(a)(8)(A)); *see also Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, No. 18-cv-2901, 2019 WL 7372663, at *9 (D.D.C. Dec. 31, 2019). Danik does not contest that the deliberative process privilege protects the documents; he argues that the FBI has not shown that releasing the documents would harm the agency's deliberative process. (Pl. Br. at 10–11.)

To establish harm, an agency must "identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld

materials" and "connect[ ] the harms in [a] meaningful way to the information withheld." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, No. 17-cv-0832, 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019) (*Judicial Watch III*). While an agency can take a categorical approach, it must provide more than "boilerplate statements," *Ctr. for Investigative Reporting*, 2019 WL 7372663, at *9, and "generic and nebulous articulations of harm." *Judicial Watch II*, 2019 WL 4644029, at *4–5.

The FBI has not done so here. It withheld certain ethics forms, a draft version of a document regarding McCabe's possible recusal, and emails related to that draft. (First Hardy Decl. ¶ 52.) For all three, the FBI declares that "[t]he release of the redacted/withheld information is likely to chill full, frank, and open discussions between agency personnel, as well as chill the thorough preparation of potential criminal matters in advance of litigation." (*Id.*) This boilerplate language does not link the harm (chilled discussion and preparation of materials) to the specific information in the withheld materials. Therefore, the explanation fails to establish foreseeable harm from disclosing the documents. *Judicial Watch II*, 375 F. Supp. 3d at 101; *Judicial Watch III*, 2019 WL 4644029, at *5 (noting the agency must provide "context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure").

Accordingly, the court will deny summary judgment for the FBI regarding Exemption 5. The court will, however, permit the FBI to supplement the record regarding foreseeable harm. Therefore, the court will also deny summary judgment for Danik.

## IV. CONCLUSION

For the stated reasons, the court will DENY DOJ's motion for summary judgment and will DENY Danik's cross-motion for summary judgment. A corresponding Order will issue separately.

Date: May 31, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge